**Leonard LACY, Petitioner, Appellant,**

v.

**Harold F. GABRIEL, Respondent, Appellee.**

**No. 83–1615.**

United States Court of Appeals, First Circuit.

Argued Jan. 4, 1984.

Decided April 11, 1984.

Benjamin Hiller, with whom Goldstein, Pressman & Hiller, Cambridge, Mass., was on brief, for petitioner, appellant.

Frances L. Robinson, Asst. Atty. Gen., Criminal Bureau, Boston, Mass., with whom Francis X. Bellotti, Atty. Gen., Frederick W. Riley, Asst. Atty. Gen., Chief, Criminal Bureau, and Barbara A.H. Smith, Asst. Atty. Gen., Chief, Criminal Appellate Division, Boston, Mass., were on brief, for respondent, appellee.

Before CAMPBELL, Chief Judge, ALDRICH, Circuit Judge, and PETTINE,* Senior District Judge.

LEVIN H. CAMPBELL, Chief Judge.

Leonard Lacy, who was convicted in a Massachusetts court of first degree murder, applied for habeas corpus in the United States District Court, 567 F.Supp. 467, for the District of Massachusetts. He alleged, among other things not now material, that his right to due process under the fourteenth amendment had been denied when one of the jurors in the state trial improperly peeled tape off two exhibits. The tape masked entries which revealed facts about Lacy's criminal past. Although Lacy had not alleged in the state courts, nor in his federal petition, that the juror's conduct implicated the confrontation clause of the sixth amendment, the district court thought that the problem was most properly analyzed under that constitutional provision rather than under principles of due process. He ordered the parties to brief and argue this point, and they did so. The district court then found that Lacy's sixth amendment right to confrontation had been violated, but ruled the error harmless and denied the petition per *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

We affirm the dismissal, but hold that the present petition is limited solely to the due process claim. That was the claim Lacy raised and exhausted in the Massachusetts courts, whereas the sixth amendment issue was never exhausted in the state courts nor did Lacy raise it himself until instructed to do so by the district judge.

I. PROCEDURAL HISTORY AND FACTUAL BACKGROUND

In a state criminal trial, a jury found Lacy guilty of first degree murder, and the Massachusetts Supreme Judicial Court (SJC) affirmed his conviction. *Commonwealth v. Lacy,* 371 Mass. 363, 358 N.E.2d 419 (1976). Several years later, William Wolbach, one of the twelve jurors who sat on the Lacy trial, revealed that he had peeled tape off two exhibits, Exhibits 4 and 20, portions of which had been masked by the court ostensibly to prevent information concerning Lacy's criminal record from reaching the jury. On August 8, 1980, after learning of the juror's action, Lacy filed a motion in state court for a new trial on the grounds that his right to due process had been violated.

Lacy's motion was heard by Superior Court Justice Pierce (who was not the original trial judge). After a hearing at which counsel for Lacy, counsel for the Commonwealth, and the court itself questioned jur-

* Of the District of Rhode Island, sitting by designation.

or Wolbach, Justice Pierce denied the motion for new trial and issued a memorandum outlining his findings.

To understand Justice Pierce's ruling, it is necessary to describe the history of the exhibits in issue. At Lacy's criminal trial, a dispute had developed over Lacy's appearance shortly after the murder. In order to show that he did not resemble the man described by witnesses as the one who had entered the elderly victim's apartment shortly before the fatal beating, Lacy introduced as Exhibit 19 a jail card bearing a photo of himself. The card contained the line "No. of Former Commitments 5." Lacy did not request to have this legend masked, and the exhibit went to the jury with this information fully visible.

In order to rebut Lacy's identification evidence, the Commonwealth introduced as Exhibit 20 a different jail card, also with a photo affixed, which contained the line "No. of Former Commitments 3–4." The card also contained the notations "(Brighton Dist. Ct.)," "($25,000 Bail)," "Norfolk," and "Walpole." These latter four notations were masked with tape. Another picture of Lacy, introduced as Exhibit 4, had tape placed across the numbers which appeared on Lacy's chest. Juror Wolbach, the lone holdout, testified that he removed the tape from the two exhibits as "a desperation move on my part to try to get somebody on my side." Since the revealed information did not, understandably, affect the other jurors, Wolbach "gave up" and voted with the other elevent jurors for conviction. Justice Pierce found that "[w]hile Exhibits 4 and 20 in this case were sanitized, the information which informed the jurors of defendant's prior involvement with the law was put before the jury by defendant through the introduction of Exhibit 19."

Lacy next filed a motion for leave to appeal Justice Pierce's denial of his motion for a new trial. This motion was denied by an order of a single justice of the Massachusetts Supreme Judicial Court. Lacy in turn appealed from this denial, but was turned back because a decision of a single justice is not reviewable. *Leaster v. Commonwealth*, 385 Mass. 547, 432 N.E.2d 708 (1982). Lacy then came to the federal court.

The matter was assigned to a magistrate who recommended granting the writ. The magistrate conceded that the jury could have inferred that Lacy had been incarcerated on several previous occasions from Lacy's own evidence, in particular Exhibit 19. He believed, however, that the masked entries differed "qualitatively" from those properly before the jury because the masked entries supported an inference of serious prior criminal convictions as opposed to unspecified commitments. This, he reasoned, resulted in unfairness sufficient to violate due process.

The Commonwealth objected to the magistrate's recommendation, and the matter was considered de novo by the district judge who, sua sponte, ordered the parties to consider the sixth amendment implications of juror Wolbach's activities as well as the more general due process implications. The court stated,

> [a]rguments ... have thus far been restricted to the issue of whether petitioner was denied due process because his conviction was obtained through "fundamentally unfair" procedures. [The parties shall file supplemental memoranda] addressing the issue of whether he was denied his sixth amendment right to confront witnesses and evidence against him.

The district court then analyzed the juror misconduct under the sixth amendment, finding a constitutional violation. The court believed, however, that existence of the violation did not automatically require issuance of the writ. It felt that it should conduct harmless error analysis under *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), and, upon doing so, concluded that the violation was harmless beyond a reasonable doubt. In so concluding, the district court emphasized the overwhelming evidence of Lacy's guilt and the fact that the vote stood at 11 to 1

in favor of conviction before the tape was removed.

## II. EXHAUSTION

 The Commonwealth argues that the issue of whether or not the juror's misconduct violated the sixth amendment and, if so, whether it amounted to harmless error, was never exhausted in the Massachusetts courts. For this reason, the Commonwealth urges, we should order dismissal of the entire habeas petition, on the ground that it is a "mixed petition" containing both exhausted and unexhausted claims. *Rose v. Lundy,* 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982). In that case, the Court required dismissal of mixed petitions, leaving the petitioner with the choice of either returning to the state courts to exhaust all the claims or else resubmitting the habeas petition to the district court after limiting it to exhausted claims.

The district court ruled that consideration of a sixth amendment claim, which Lacy pressed only after the district court raised the issue on its own motion, did not require dismissal of the petition under *Rose.* The district court acknowledged that principles of comity require that the federal courts only consider those claims that the state courts have had a fair opportunity to consider. However, it reasoned that this principle "does not necessarily require that every legal theory presented to the federal court must have been presented in precisely the same manner to the state court." The district court felt that the state courts and itself were confronted with the same ultimate issue for disposition, namely, whether the error was harmless beyond a reasonable doubt, and that this was so whether the complaint was framed in the general terms of fundamental fairness and due process or more specifically articulated under the sixth amendment. Thus, though the district court conducted a sixth amendment analysis, it viewed itself as disposing of the due process claim as well.

We believe the district court erred in finding the sixth amendment issue indistinguishable from those previously exhausted.

To be sure, the petitioner in *Rose* had brought four separate grounds for relief into federal court, each of which was based on a different alleged miscue at trial, only two of which were presented to the state courts. Here Lacy complains of a single event, the removal of the tape, and now argues that the incident violates two constitutional rights, due process and confrontation, though he only argued a violation of due process in the state court. Nevertheless, this is a distinction without a difference for we have said on numerous occasions that a habeas petitioner cannot present either new factual allegations *or* new legal theories that transform his claim or cast it in a significantly different light. *Williams v. Holbrook,* 691 F.2d 3, 6 (1st Cir.1982) ("[the petitioner] must have provided the state courts not only with all the facts supporting her constitutional claims but also must have submitted the same governing legal arguments she would make in the district court"); *Eaton v. Holbrook,* 671 F.2d 670, 671 (1st Cir.1982) (exhaustion requirement not satisfied by merely making the same factual allegations to the state as to the federal court); *Domaingue v. Butterworth,* 641 F.2d 8, 12 (1st Cir.1981) (the exhaustion requirement is not satisfied if the petitioner presents new legal theories or factual allegations); *Turner v. Fair,* 617 F.2d 7, 11 (1st Cir. 1980) (petition dismissed because "theory" advanced by petitioner never advanced to state trial or appellate court). *See also Anderson v. Harless,* 459 U.S. 4, 103 S.Ct. 276, 74 L.Ed.2d 3 (1982) (per curiam) (habeas petitioner must have fairly presented the substance of his habeas claim to the state court). Further, the Supreme Court has instructed that exhaustion be strictly enforced:

> A rigorously enforced total exhaustion rule will encourage state prisoners to seek full relief first from the state courts, thus giving those courts the first opportunity to review *all claims of constitutional error.*

455 U.S. at 518–19, 102 S.Ct. at 1203–04 (emphasis supplied).

We have recently cautioned that "the only safe course for a petitioner is *explicitly* to identify his federal constitutional claims before the state court." *Dougan v. Ponte*, 727 F.2d 199 at 202 (1st Cir.1984) (emphasis supplied).

While each legal theory presented to the federal courts need not have been presented in precisely the same fashion to the state courts, a claimed denial of the benefit of a specific provision of the Bill of Rights, such as the sixth amendment right to confrontation, involves not only a different section of the Constitution but a mode of analysis which may be significantly different from a challenge based on more general due process grounds. *See, e.g., Donnelly v. DeChristoforo*, 416 U.S. 637, 643–44, 94 S.Ct. 1868, 1871–72, 40 L.Ed.2d 431 (1974). Lacy makes much of this asserted difference here, asserting that under sixth amendment, as distinct from due process, analysis, the burden is squarely upon the Commonwealth to show that any error was harmless beyond a reasonable doubt. Whether or not these analytical distinctions would actually lead to different results on these facts, they are sufficiently basic to prevent us from deciding that Lacy's exclusively due process argument in the state court served to "exhaust" the sixth amendment claim that surfaced later in the district court.

Since the sixth amendment claim was unexhausted, it was error for the district court to decide it. To be sure, as the court's decision was against Lacy and for Massachusetts, federal-state relations were not adversely affected; but we do not read *Rose v. Lundy* as requiring exhaustion only when the federal decision goes against the state.

█ The harder question is whether we must now treat the entire petition as "mixed" and—as *Rose v. Lundy* directs, in the event of a mixed petition—dismiss the entire petition. Ordinarily, of course, there would be no question but that such a course was required. Had Lacy's petition for habeas corpus included the unexhausted sixth amendment claim, or had Lacy himself raised or amended his petition to include such a claim later in his habeas proceeding, the petition would clearly be "mixed"; and dismissal would be required by *Rose v. Lundy*.

There are a number of unusual factors here, however, which cause us to take a different course. First, the petition submitted by Lacy nowhere mentions a sixth amendment claim. He only argued that claim *after* the district court ordered the parties to brief and argue it. Second, the district court suggested to Lacy, erroneously as we have held, that the sixth amendment argument was merely a different facet of the one he had presented to the state courts. It would be unrealistic to have expected Lacy's counsel to disagree.

It is true that Lacy was not relieved of the duty *to exhaust* simply because the district court, rather than he, raised the sixth amendment argument. *See Picard v. Connor*, 404 U.S. 270, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971). But it does not necessarily follow from this that Lacy's "petition" should now be viewed as "mixed," triggering mandatory dismissal not only of the sixth amendment claim but of the fully exhausted due process claim which Lacy sought all along to raise. The issue here is whether the district court had the power to "mix" Lacy's petition for him, or alternatively, whether Lacy, in effect, "amended" his petition to include the sixth amendment claim by arguing the point after having been ordered to do so by the district court.

Fed.R.Civ.P. 15 governs amendment of pleadings in this case,[1] and it provides that if

issues not raised by the pleadings are tried by express or implied consent of the

---

1. As a habeas proceeding is civil in nature, the Federal Rules of Civil Procedure apply, *see Browder v. Director*, 434 U.S. 257, 269, 98 S.Ct. 556, 563, 54 L.Ed.2d 521 (1978). Further, Rule 11, 28 U.S.C., fol. § 2254 provides that "The Federal Rules of Civil Procedure, to the extent that they are not inconsistent with these rules, may be applied, when appropriate, to petitions filed under these rules."

**12**

parties, they shall be treated in all respects as if they had been raised in the pleadings.

Here, there was no such agreement, as the Commonwealth strongly and clearly objected below, because of non-exhaustion, to any consideration of the sixth amendment claim. Nor did Lacy ever amend, or seek to amend, his petition to include such a claim. *See* Fed.R.Civ.P. 15(a). Thus we think it would be stretching the point to say that Lacy's "petition" ever included a sixth amendment claim and so was "mixed." The sixth amendment claim became an issue not because Lacy himself raised it but because the district court insisted that it become part of the case. Lacy was entitled all along to present only a part of the claims available to him. In presenting only a portion of his claims on habeas he, of course, ran the risk of being held to abuse the writ and hence to have lost any right to seek review of the withheld claims, but that is another matter. *See generally McLaughlin v. Gabriel*, 726 F.2d 7 (1st Cir.1984) (discussion of factors justifying dismissal of petition based on abuse of the writ). We think the district court may not convert a valid habeas petition to an unexhausted one. For these reasons we do not view the petition as mixed. Rather we treat it as written—raising a due process claim, and silent as to any sixth amendment claim. On this basis, we decline to consider the sixth amendment claim on appeal and we rule that so much of the district court's opinion as analyzes Lacy's petition under the sixth amendment is a nullity. We turn now to the merits of the due process claim.

### III. DUE PROCESS

■ The question here boils down to whether, in spite of the tape removal incident, Lacy had a substantially fair, if less than perfect, trial. *DeChristoforo v. Donnelly*, 473 F.2d 1236, 1241 (1st Cir.1973) (Campbell, J., dissenting), *reversed*, 416 U.S. 637, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974). It is important to remember in this regard that not every mistake or error which occurs during a trial which might justify use of supervisory powers results in unfairness in the due process sense, and federal courts have no supervisory powers over state judicial proceedings; federal intervention is only proper to correct errors of constitutional dimension. *See, e.g., Smith v. Phillips*, 455 U.S. 209, 221, 102 S.Ct. 940, 948, 71 L.Ed.2d 78 (1982).

■ It is an unfortunate fact that the juror misconduct was not discovered until several years after the trial; thus there was no possibility of an on-the-spot curative instruction by the trial judge or perhaps other corrective measures. Nevertheless, a post-trial hearing was held in the state court by Judge Pierce (the trial judge had died prior to the revelation of the error), in which all interested parties participated, to determine the circumstances surrounding the removal of the tape, the impact on the jury, and whether or not the incident was prejudicial. This is precisely the type of procedure ordered by the Court in *Remmer v. United States*, 347 U.S. 227, 229–30, 74 S.Ct. 450, 451–52, 98 L.Ed. 654 (1954), and approved in more recent cases as an appropriate method of uncovering juror bias. Following *Remmer*, the Court said in *Smith* that

> [d]ue process means a jury capable and willing to decide the case solely on the evidence before it, and a trial judge ever watchful to prevent prejudicial occurrences *and to determine the effect of such occurrences when they happen.* Such determinations may properly be made at a [post-trial] hearing like that ordered in *Remmer* and held in this case.

455 U.S. at 217, 102 S.Ct. at 946 (emphasis supplied). We think the same procedure appropriate here, where the question is whether a juror's vote was impermissibly influenced by extraneous information.

After conducting a *Remmer*-type hearing at which the court listened to juror Wolbach's testimony and participated in the questioning, the state court judge determined that no prejudicial consequences resulted from the tape removal incident because the information received thereby was "cumulative" of that already before

the jury. Significantly, the Supreme Court has directed that, in hearings of this type, it is the state trial court that should determine the effect that the prejudicial event had on the jury. It would seem that this determination is one of fact that should be accorded deference under *Sumner v. Mata*, 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981).

Lacy argues, however, that the determination of whether the revealed information is cumulative is a mixed question of law and fact and that this court should make an independent assessment. *Sumner v. Mata*, 455 U.S. 591, 102 S.Ct. 1303, 71 L.Ed.2d 480 (1982) (per curiam) (*Sumner II*). To be sure, the Court instructed in *Sumner II* that the "ultimate question as to the constitutionality ... is a mixed question of law and fact that is not governed by § 2254." However, the Court cautioned, "the questions of fact that underlie this ultimate conclusion *are* governed by the statutory presumption as our earlier opinion made clear." *Id.* at 597, 102 S.Ct. at 1307.

During the hearing the state court seemed to view itself as a factfinder, and commented, "Well, we have to determine whether that's the fact, whether the evidence as unsanitized affected the verdict," and counsel for Lacy agreed. The court asked Wolbach point blank about the effect the information under the tape had on his vote and, significantly, what he learned after the tape was removed that he did not know beforehand.

> THE COURT: ... Was it what you learned thereafter which persuaded you to change your vote?
>
> THE WITNESS: It had a significant amount to do with it, yes.
>
> THE COURT: Well, I'll ask you to examine these exhibits and tell me, sir, what it was that you learned after removing the tape that you did not know from examining the exhibits prior to that.

Wolbach responded that the "additional" information was that Lacy "had been up for trial in a different court for something else" and that Lacy had "been to jail in Norfolk and Walpole. I mean, that's just the inference I took from it." Earlier, when asked by the Commonwealth whether he was already possessed of information relating to prior commitments due to portions of the jail cards that had not been covered with tape, he responded, "that's not what my attention was drawn to. I can't even remember reading those lines. Although, yes, it is there. You're right." Further, Wolbach recalled testimony about other crimes during the course of the trial and the judge's instruction to disregard it.

In addition to learning the identity of the prisons in which Lacy had previously been confined, Wolbach learned a crucial fact, important, perhaps, only in the dynamics of jury deliberations, namely, that there was no information under the tape which could help him hold out for acquittal. Wolbach termed the removal of the tape a "desperation move on my part" and further commented "I felt pretty desperate, and I was trying to get—if I could get one person, I felt I could maybe hold off, but I couldn't get anybody else."

It seems clear that absent any new information in favor of Lacy, Wolbach was resigned to eventually voting for conviction. When the removal of the tape did not produce any favorable evidence or generate any sympathy for Lacy, Wolbach voted for conviction because he did not feel he could hold out alone. On this record, the state court's finding that the improperly exposed material was merely cumulative is well supported. A further reason for upholding this finding is that the Massachusetts Supreme Judicial Court determined, in a proceeding unrelated to the tape removal incident, that the "jail card introduced by [Lacy] was offered and admitted in its entirety and contained some entries which would indicate his commission of other crimes." *Commonwealth v. Lacy*, 371 Mass. 363, 367, 358 N.E.2d 419, 422 (1976).

Based on these findings, we do not perceive a species of unfairness which implicates due process, and we therefore affirm the denial of the petition. We do not agree

with the magistrate and Lacy that the new information differed "qualitatively" from that properly before the jury, and thus violated due process. To be sure, Walpole and Norfolk are prisons in which Massachusetts houses persons convicted of serious crimes, whereas Suffolk County jail is not so used, and a person can be confined in the latter temporarily without having been convicted of anything. Nevertheless, it seems unlikely the average juror would be aware of these facts, and perhaps more importantly, during questioning, Wolbach did not indicate that he inferred the commission of serious crimes from the entries under the tape. He simply inferred that Lacy had been to jail at Norfolk and Walpole, and the cards already indicated that he had been to jail at Suffolk on five previous occasions. Absent more of a showing, we cannot see how learning the identity of the prisons at which Lacy had been confined was sufficiently prejudicial to result in a denial of due process. Further, we attach little significance to the revelation of the bail amount, as it is usual for a person tried for a serious crime, as Lacy was in this case, to be required to post a bond. We have no reason to suppose that a juror would think $25,000 either particularly high or particularly low.

We are not persuaded that the uncovering of numbers across Lacy's chest and the entry referring to Brighton District Court resulted in prejudice either. As the jury was already possessed of information suggesting Lacy had previously committed other crimes, it was clearly not a surprise that he had been on trial in another court and that somewhere in the process his photo had been taken with identification numbers. Thus, for all practical purposes, the new information did not cast the evidence of Lacy's prior crimes properly before the jury in a different light.

When the cumulative nature of the new information is coupled with Wolbach's purpose in removing the tape (to uncover exculpatory evidence or develop sympathy for Lacy) and Wolbach's recollection that the judge instructed that evidence of other crimes be disregarded, a violation of due process did not occur.

*The denial of Lacy's petition for habeas corpus is affirmed.*