# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT JACKSON

### DECEMBER SESSION, 1997

FILED

April 21, 1998

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| **STATE OF TENNESSEE,** | ) | **C.C.A. NO. 02C01-9706-CC-00223** |
| | ) | |
| Appellee, | ) | |
| | ) | |
| | ) | **LAUDERDALE COUNTY** |
| **VS.** | ) | |
| | ) | **HON. JOE H. WALKER** |
| **TIMMY FULTON,** | ) | **JUDGE** |
| | ) | |
| Appellant. | ) | **(Direct Appeal - 2nd Degree Murder)** |

FOR THE APPELLANT:

C. MICHAEL ROBBINS
3074 East Street
Memphis, TN 38128

GARY F. ANTRICAN
District Public Defender
25th Judicial District
P. O. Box 700
Somerville, TN 38068

FOR THE APPELLEE:

JOHN KNOX WALKUP
Attorney General and Reporter

DEBORAH H. TULLIS
Assistant Attorney General
425 Fifth Avenue North
Nashville, TN 37243

ELIZABETH RICE
District Attorney General

MARK DAVIDSON
WALT FREELAND
Assistant District Attorneys
302 Market Street
Somerville, TN 38068

OPINION FILED _____

AFFIRMED

JERRY L. SMITH, JUDGE

# OPINION

On October 18, 1996 a Lauderdale County jury convicted Appellant, Timmy Fulton, of murder in the second degree. After a sentencing hearing, the trial court sentenced Appellant to twenty-two years incarceration to be served at one hundred percent pursuant to Tennessee Code Annotated § 40-35-501(I)(1)&(2). Appellant appeals from his conviction, presenting two issues:

> 1. whether the trial court erred in refusing to grant a mistrial based upon prosecutorial misconduct; and
> 2. whether the evidence presented at trial was sufficient to support the jury verdict.

After a review of the record, we affirm the judgment of the trial court.

## FACTS

On July 7, 1995, Appellant and his sister, Teresa Spivey, picked up Kevin Currie from Currie's aunt's house in Ripley, Tennessee. They took Currie to his house so that he could change clothes. When Currie emerged from the house, he had a gun with him which was loaded with one bullet in the clip. Appellant then drove, with Spivey and Currie, from Ripley, Tennessee to Halls, Tennessee.

When they reached Halls, Appellant parked the car on the side of Pearl Street. The victim, Wayne Cunningham, stopped his car near the car driven by Appellant. Currie testified that Appellant asked him for his gun. Currie gave the gun to Appellant who said he was going to "get" Cunningham. Spivey testified that it was Currie who identified the victim as the man who had shot at Appellant, and that Currie pulled out his gun, offering it to Appellant and said, "[i]t's not loaded--loaded. If you don't do it, I'll do it." Spivey did not see Appellant take the

gun, though she assumed that he had done so. Appellant got out of the car and got into the car driven by the victim.

Currie then drove himself and Spivey to Spivey's aunt's house on Church Street. Spivey visited with her aunt and other people who were standing around in her aunt's yard. Currie left on foot down Church Street. About ten minutes later, Spivey and the others in the yard heard a crashing sound and went to where the victim's car had crashed into a nearby house.

Testimony revealed that the victim's car had rolled down Ceder Street with it's lights out and the passenger door open. The victim was found inside the car with a gunshot wound to his leg. He bled to death quickly due to the severance of his femoral artery by a bullet.

Appellant appeared on the scene of the car crash, walking down Pearl Street. He asked witness Alfred Roundtree what had happened. Currie approached from the direction of Church Street. Currie testified that Appellant told him that Appellant had shot the victim and that Appellant thought that "that guy was going for a --- make a fake pistol break." Currie also testified that he went to his cousin's house and told his cousin that he, Currie, had killed a man. Currie claimed that he told his cousin this because he was afraid of Appellant, however Appellant was not with Currie when he visited his cousin. Ms. Martha Spivey, Appellant 's mother and Currie's aunt, testified that Currie came to her house around five o'clock in the morning of July 8, 1995. Currie told her that he had been in an argument with a man in Halls and that he had shot the man. She testified that Currie was nervous, crying, and sick to the point of throwing up.

Currie was arrested along with Appellant and charged with murder in the second degree. Currie pled guilty to facilitation of a felony of second degree murder in exchange for an eight year sentence.

## I. Prosecutorial Misconduct

Appellant alleges that the trial court erred in refusing to grant Appellant's motion for a mistrial after the State revealed that it had withheld a statement by Teresa Spivey from the defense. At trial, Teresa Spivey testified that she never saw Currie hand Appellant the gun. The State, who had called Ms. Spivey, impeached this testimony, using a statement Ms. Spivey gave July 12, 1995, in which she said, "[Currie] handed the gun to Timmy." Ms. Spivey testified at trial that she had assumed that Currie handed the gun to Appellant but that she really did not see the exchange. After Ms. Spivey was released and the trial had progressed, the State disclosed that Ms. Spivey had given a second statement eight months prior to trial in which she said exactly what she said at trial, that though she assumed that the gun changed hands, she did not actually see it do so. The State knew about this second statement, but failed to provide it to the defense either as Brady material or as Jencks material. Appellant argues that, because the prosecution's withholding of Ms. Spivey's statement could have affected the jury verdict to his prejudice, he is entitled to a new trial.

## A. Impeachment of the State's Own Witness

Appellant contends that the trial court erred in refusing to grant a mistrial after the State impermissibly impeached Ms. Spivey with her prior statement. Initially, we note that Appellant failed to raise this issue in his motion for a new trial. In so doing, Appellant effectively waived this issue. State v. Sexton, 917

-4-

S.W.2d 263, 266 (Tenn. Crim. App. 1995); State v. Moffett, 729 S.W.2d 679, 682 (Tenn. Crim. App. 1986); Tennessee Rules of Appellate Procedure 3(e). In any event, the Tennessee Rules of Evidence Rule 607 provides: "The credibility of a witness may be attacked by any party, including the party calling the witness." This rule abolishes the "common law prohibition against impeaching one's own witness." Rule 607 Tennessee Rules of Evidence Advisory Commission Comments. This rule allows impeachment by either party so long as the questioning is not a pretext for putting inadmissible hearsay before the jury. State v. Johnson, C.C.A. No. 02-C01-9504-CC-00097, Obion County (Tenn. Crim. App., Jackson, February 27, 1997) (citing State v. Mays, 495 S.W.2d 833 (Tenn. Crim. App. 1972), cert. denied (Tenn. 1973)).

In this case, we do not find that the impeachment of Ms. Spivey was for any improper purpose. Ms. Spivey's testimony established a "fact of consequence" which was crucial to the State's case, by providing the corroboration necessary for Currie's accomplice testimony. State v. Hankins, C.C.A. No. 02C01-9603-CR-00098, Shelby County (Tenn. Crim. App., Jackson, May 23, 1997). Appellant has also failed to show how the impeachment of Ms. Spivey in any has prejudiced his case. Ms. Spivey testified at trial that she assumed that Currie handed Appellant the gun. While perhaps less damning than Currie's testimony, Ms. Spivey's pretrial and trial testimony put Appellant in the car with the victim shortly before the victim was killed and placed him at the scene shortly after the killing. Any effect that any improper impeachment might have had was harmless. The State was free under the Rules of Evidence to impeach Ms. Spivey. This issue is without merit.

## B. Brady Violation

Appellant also contends that the State violated the provisions set out by the United States Supreme Court in Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) by failing to disclose Ms. Spivey's second statement prior to trial. There are four prerequisites a defendant must demonstrate in order to establish a due process violation under Brady. They are:

1. The defendant must have requested the information (unless the evidence is obviously exculpatory, in which case the State is bound to release the information whether requested or not);

2. The State must have suppressed the information;

3. The information must have been favorable to the accused; and

4. The information must have been material.

State v. Edgin, 902 S.W.2d 387,389 (Tenn. 1995)(citing State v. Evans, 838 S.W.2d 185 (Tenn.1992); State v. Spurlock, 874 S.W.2d 602 (Tenn. Crim. App.1993); Workman v. State, 868 S.W.2d 705 (Tenn. Crim. App.1993); State v. Marshall, 845 S.W.2d 228 (Tenn. Crim. App.1992); Strouth v. State, 755 S.W.2d 819 (Tenn. Crim. App.1986)). The standard of materiality of the evidence for a Brady violation requires that "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." State v. Edgin, 902 S.W.2d 387, 390 (Tenn. 1995).

In the matter sub judice, Appellant filed a Brady request on October 12, 1995, requesting any exculpatory materials which the State might have in its possession or constructive possession. Nevertheless the State did not turn over to the defense Ms. Spivey's second statement. The information in the second

statement clarified Ms. Spivey's initial statement to the authorities, saying that she did not actually see Currie hand Appellant the gun, but rather that she merely assumed he did so. While it appears that the State failed to turn over Ms. Spivey's statement, we cannot find even a slim probability that the disclosure of Ms. Spivey's statement would have resulted in Appellant's acquittal. Further, even if the State had failed to comply with Brady, a Brady violation results in a breach in due process only if the withholding of evidence prevents material exculpatory evidence from effectively being used at trial. United States v. Peters, 732 F.2d 1004 (1st Cir. 1984); United States v. Higgs, 713 F.2d 39, 44 (3rd Cir 1983); United States v. Xheka, 704 F.2d 974, 981 (7th Cir. 1983); United States v. McPartlin, 595 F.2d 1321, 1346 (7th Cri.) cert, denied, 444 U.S. 833, 100 S.Ct. 65, 62 L.Ed. 2d 43 (1979); State v. Caughron, 855 S.W.2d 526 (Tenn. 1993)(Daughtrey, J., dissenting). Not only has the evidence not been shown to be exculpatory or material, Appellant has not put forth any proof of prejudice which resulted from the delay in disclosure of the statement. This issue is without merit.

### C. Jencks Violation

Appellant further argues that the State violated the provisions of Rule 26.2(e) of the Tennessee Rules of Criminal Procedure, also known as the Jencks Act, by failing to provide the defense with a copy of Ms. Spivey's second statement after her direct testimony. In pertinent part, the rule reads as follows:

Production of Statements of Witnesses.--

(a) Motion for Production. After a witness other than the defendant has testified on direct examination, the trial court, on motion of a party who did not call the witness,

shall order the attorney for the state or the defendant and his attorney, as the case may be, to produce, for the examination and use of the moving party, any statement of the witness that is in their possession and that relates to the subject matter concerning which the witness has testified.

(e) Sanction for Failure to Produce Statement. If the other party elects not to comply with an order to deliver a statement to the moving party, the court shall order that the testimony of the witness be stricken from the record and that the trial proceed, or, if it is the attorney for the state who elects not to comply, shall declare a mistrial if required by the interest of justice.

The defense filed a pretrial motion requesting Rule 26.2 material be disclosed subsequent to the testimony of each witness. Following Ms. Spivey's testimony, the State provided the defense with one of Ms. Spivey's statements but failed to present the defense with the second. According to the record, the State's failure to provide the defense with the statement was not an intentional act, but rather a miscommunication resulting from the defense indicating it had the witness' statement and the State not seeking clarification as to whether the defense had both statements.

Under Rule 26.2(e) the trial court "shall declare a mistrial if required by the interests of justice" if the State fails to "comply with an order to deliver a statement to the moving party." Also, if a party elects not to comply with a Rule 26 court order, the trial court "shall order that the testimony of the witness be stricken from the record." Tennessee Rules of Criminal Procedure 26.2(e). Rule 26.2 (e) sanctions do not rest upon a showing of bad faith, and even the "unintentional withholding or destruction of statements, regardless of motive, may be viewed as a violation of Rule 26.2 for which appropriate sanctions may be

applied." <u>State v. Inman</u>, C.C.A.No. 03C01-9201-CR-00020, Campbell County (Tenn. Crim. App., Knoxville, November 23, 1993).

Any error which resulted from the State's oversight in providing the defense with both prior statements was not only harmless, but also could have been cured by the defense. The parties realized that one of the statements had not been disclosed prior to the close of the State's proof. The defense had the opportunity to recall Ms. Spivey to rehabilitate her testimony with the second statement. The defense chose not to do so. A final judgment shall not be set aside for failure to comply with a Rule 26.2 order unless, considering the entirety of the record, "error involving a substantial right more probably than not affected the judgment or would result in prejudice to the judicial process." Tennessee Rules of Appellate Procedure Rule 36 (b). The trial court did not abuse its discretion in refusing to grant a mistrial for this violation of Rule 26.2; such a sanction would have been inappropriate where the defense held the keys to negating the effect of the error and chose not to do so. This issue is without merit.

## II. Sufficiency of the Evidence

Appellant argues that the evidence presented at trial was insufficient to support the jury's verdict of second degree murder. When an appellant challenges the sufficiency of the evidence, this Court is obliged to review that challenge according to certain well-settled principles. A verdict of guilty by the jury, approved by the trial judge, accredits the testimony of the State's witnesses and resolves all conflicts in the testimony in favor of the State. <u>State v. Cazes</u>, 875 S.W.2d 253, 259 (Tenn. 1994); <u>State v. Harris,</u> 839 S.W.2d 54, 75 (Tenn. 1992). Although an accused is originally cloaked with a presumption of

innocence, a jury verdict removes this presumption and replaces it with one of guilt. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). Hence, on appeal, the burden of proof rests with Appellant to demonstrate the insufficiency of the convicting evidence. Id. On appeal, "the [S]tate is entitled to the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." Id. (citing State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978)). Where the sufficiency of the evidence is contested on appeal, the relevant question for the reviewing court is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. Harris, 839 S.W.2d 54, 75; Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). In conducting our evaluation of the convicting evidence, this Court is precluded from reweighing or reconsidering the evidence. State v. Morgan, 929 S.W.2d 380, 383 (Tenn. Crim. App. 1996); State v. Mathews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Moreover, this Court may not substitute its own inferences "for those drawn by the trier of fact from circumstantial evidence." Id. at 779. Finally, the Tennessee Rules of Appellate Procedure, Rule 13(e) provides, "findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact beyond a reasonable doubt." See also State v. Mathews, 805 S.W.2d at 780.

Appellant contends that the evidence presented at trial was insufficient to convict him on two accounts: (A) the only evidence the State presented against Appellant was uncorroborated accomplice testimony, and (B) the State failed to prove beyond a reasonable doubt that the killing was not in self-defense.

Addressing these issues in turn, we hold that the evidence was sufficient to support the jury verdict.

## A. Accomplice Testimony

Appellant contends he was impermissibly convicted upon uncorroborated accomplice testimony, arguing that other than the testimony of Currie, his accomplice, there was no evidence presented at trial which tied Appellant to the crime. It is well-settled that Tennessee law requires only a modicum of evidence in order to sufficiently corroborate the testimony of an accomplice. Clapp v. State, 94 Tenn. 186, 30 S.W.2d 214 (1895); State v. Copeland, 677 S.W.2d 471 (Tenn. Crim. App. 1984). This Court held in State v. Barnard that "an accomplice's testimony is deemed sufficiently corroborated by placing a defendant at the scene of the crime as described by the accomplice." State v. Barnard, 899 S.W.2d 617, 626 (Tenn. Crim. App. 1994). We have further held that "if the corroborating evidence fairly and legitimately tends to connect the accused with the commission of the crime charged it satisfies the requirement of the rule on corroboration of an accomplice's testimony." State v. Copeland, 677 S.W.2d 471, 475 (Tenn. Crim. App. 1984). In this case, Appellant was seen in the company of the victim shortly before the time of the murder. Under the precedent set by this Court, the evidence presented by Ms. Spivey that Appellant got into the victim's car a mere ten minutes before the shooting, that she assumed he had a gun, and that he showed up at the scene of the car crash moments after it happened is sufficient corroboration to sustain the verdict. This issue is without merit.

## B. Self-Defense

Appellant also argues that the evidence presented at trial, through the testimony of Currie supports a defense theory of self-defense in that Currie testified that Appellant thought the victim was about to draw a gun. Further, the evidence presented at trial revealed that there were spent cartridge shells from a .22 found in the car, perhaps also indicating that the occupant of the car shot at someone, possibly Appellant. It is true that, once properly presented, a defense of self-defense necessitates that the State prove beyond a reasonable doubt that the defendant did not commit the crime in self-defense. Tenn. Code Ann. § 39-11-201(a)(3). In this case, the issue of self-defense was not presented by Appellant, but was brought out during the State's case-in-chief. Since evidence produced at trial whether presented on direct or cross of a State or defense witness may be utilized by either party, the defense of self-defense was raised in this case. *See* Tenn. Code Ann. § 39-11-201(d).

Appellant requested that the trial court charge the jury as to the defense of self-defense, and the trial court said it would so charge the jury if the Appellant's closing argument included discussion of that theory. The record does not contain the jury instructions, thus it is impossible for this Court to determine whether the jury was given an instruction regarding self-defense. Because it is Appellant's responsibility to put before this Court all of the record which is needed in adjudicating his claims, any issue regarding the trial court's self-defense instruction or failure to so charge the jury is waived. Tennessee Rules of Appellate Procedure, Rule 24.

Our task, on appellate review is to determine whether, based on the evidence presented, the jury could have determined beyond a reasonable doubt

that Appellant did not commit this crime in self-defense. In the instant case Appellant was tied to the crime through the testimony of two witnesses. Ms. Spivey testified that Appellant got into the victim's car some time before the killing, which clearly implicates Appellant as a possible perpetrator of the crime. The State also presented Appellant's accomplice, Currie. Currie testified at trial that Appellant told him that Appellant killed the victim in self-defense. This testimony, without more, would not meet the State's burden of proof. However Currie testified in court that he gave a statement to the police on July 11, 1995. In that statement, Currie stated that Appellant told him prior to the crime that "[Appellant] was going to get the guy." Currie conceded this latter statement was made when his memory of the crime was clearer. Obviously the jury accredited the statement Currie made to the police July 11, 1995 over his testimony concerning self-defense.

The jury was free to resolve the apparent conflict in Currie's testimony however it chose. Weight and credibility of the witnesses' testimony are matters entrusted exclusively to the jury as triers of fact. State v. Wright, 836 S.W.2d 130 (Tenn. Crim. App. 1992) (citing State v. Sheffield, 676 S.W.2d 542 (Tenn. 1984); Byrge v. State, 575 S.W.2d 292 (Tenn. Crim. App. 1978)). The State presented evidence, which if believed, negated the defense theory of self-defense. This issue is without merit.

Therefore, the judgment of the trial court is affirmed.

-14-

_____
JERRY L. SMITH, JUDGE

CONCUR:


_____
JOE B. JONES, PRESIDING JUDGE


_____
J. CURWOOD WITT, JR., JUDGE