# United States Court of Appeals

## For the First Circuit

No. 98-1921, 99-1379

STEVEN J. NOWACZYK,

Petitioner, Appellant,

v.

WARDEN, NEW HAMPSHIRE STATE PRISON,

Respondent, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW HAMPSHIRE

[Hon. Joseph A. DiClerico, Jr., U.S. District Judge]

Before

Torruella and Lipez, Circuit Judges,
and Schwarzer,* Senior District Judge.

William A. Hahn, with whom Hahn & Matkov was on brief, for
appellant.

Nicholas Cort, Assistant Attorney General, with whom Philip T.
McLaughlin, Attorney General, was on brief, for appellee.

August 14, 2002

---

* Of the Northern District of California, sitting by designation.

**LIPEZ, <u>Circuit Judge</u>.** This is the latest in a steady stream of cases involving the complex procedural requirements that govern habeas corpus petitions filed under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254. This case differs from the norm, however, because the petition before us does not suffer from any procedural flaw. It was filed within AEDPA's one-year statute of limitations, <u>see</u> <u>id.</u> § 2244(d)(1), and it contains only fully-exhausted claims, <u>see</u> <u>id.</u> § 2254(b) and (c). Nevertheless, the district court refused to address the merits of those claims and dismissed the petition without prejudice because the petitioner, Steven Nowaczyk, was in the process of adjudicating an additional claim -- one he had not presented in his habeas petition -- in state court. AEDPA's statute of limitations has now run its course, meaning that Nowaczyk will be barred from filing a new petition if he cannot proceed on the petition dismissed by the district court. Although we conclude that the district court was not required to adjudicate Nowaczyk's claims immediately, we hold that it abused its discretion in dismissing his petition rather than retaining jurisdiction and entering a stay pending the outcome of the state proceedings.

**I.**

In December, 1994, Nowaczyk was convicted in New Hampshire state court on charges of arson, conspiracy to commit arson, and witness tampering. The New Hampshire Supreme Court affirmed his conviction on direct appeal, entering its final

-2-

judgment on January 24, 1997.  Nowaczyk did not seek further review from the United States Supreme Court.

Under AEDPA, Nowaczyk had one year "from the date on which [his conviction] became final by the conclusion of direct review or the expiration of the time for seeking such review" in which to pursue federal habeas relief under § 2254.  28 U.S.C. § 2244(d)(1)(A).  The parties agree that the one-year limitations period began on April 24, 1997,[1] which marks the end of the 90-day period for filing a petition for writ of certiorari from the United States Supreme Court.  See Donovan v. Maine, 276 F.3d 87, 91 (1st Cir. 2002) ("[S]ection 2244(d)(1) provides for tolling during the ninety-day period in which the petitioner would have been allowed to ask the United States Supreme Court to grant certiorari to review the [state court's] denial of his direct appeal (the fact that the petitioner did not seek certiorari is immaterial).").

The statute of limitations is tolled whenever "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2).  We have held that an application for state post-conviction relief is "pending" -- and, thus, the statute of limitations is tolled -- not only when the application "actually is being considered by the trial or appellate court, but also during the 'gap' between the trial court's initial disposition and the petitioner's timely filing of a petition for review at the next

---

[1] A chronology of the important dates in this case is set forth in the appendix.

-3-

level."  Currie v. Matesanz, 281 F.3d 261, 266 (1st Cir. 2002) (internal quotation marks omitted); see also Carey v. Saffold, 122 S. Ct. 2134, 2136 (2002) (confirming the prevailing view that an application remains pending between "a lower state court's decision and the filing of a notice of appeal to a higher state court"). Such tolling enables state prisoners to comply with AEDPA's exhaustion provisions, 28 U.S.C. § 2254(b) and (c), which require them to give state courts a "full opportunity" to address constitutional claims before presenting those claims to a federal court, O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999).

Here, Nowaczyk filed his § 2254 petition in federal district court on June 20, 1997, roughly two months after the statute of limitations began to run.  The petition stated four claims:  (1) that there was insufficient evidence to support his conviction; (2) that the jury was permitted to consider prejudicial evidence; (3) that he received ineffective assistance of counsel at trial; and (4) that he was denied the right to a neutral judge both at trial and on appeal.  Unlike the first three claims, Nowaczyk had not raised the issue of judicial bias on direct appeal from his state conviction.  In AEDPA parlance, therefore, that claim was "unexhausted."  Perhaps anticipating that problem, Nowaczyk filed an application for state post-conviction review on October 28, 1997, in which he presented his claim of judicial bias.  He filed a second such application on May 10, 1998, raising a claim of double jeopardy that was not included in his § 2254 petition.

On July 22, 1998, the district court dismissed Nowaczyk's § 2254 petition without prejudice. The court noted that Nowaczyk's first application for state post-conviction review was then pending before the New Hampshire Supreme Court. It concluded, therefore, that Nowaczyk had failed to exhaust all available state remedies as to his claim of judicial bias, and dismissed the § 2254 petition on that ground.

Nowaczyk filed a notice of appeal from the district court's decision on July 24. Approximately one week later, on July 31, 1998, the New Hampshire Supreme Court entered its final decision rejecting Nowaczyk's judicial bias claim. Citing that decision, Nowaczyk asked the federal district court to reconsider its judgment. He argued that dismissal no longer was appropriate now that all of the claims presented in his § 2254 petition were fully exhausted. The district court denied the motion by margin order, reasoning that Nowaczyk's pending appeal before us rendered his motion for reconsideration "moot."

Nowaczyk then filed a motion in this court for summary reversal. We granted the motion, explaining that, "[e]ven though [Nowaczyk's] appeal had been noticed when the motion [for reconsideration] was filed, the motion was not entirely moot. The district court still had authority to review the motion and to notify this court if it was inclined to grant relief." Accordingly, we remanded to the district court so that it could address the merits of Nowaczyk's motion for reconsideration. We emphasized that the court should consider whether, given the time

limitations imposed by AEDPA, dismissal still was appropriate in Nowaczyk's case.

On remand, the matter was referred to a magistrate judge, see 28 U.S.C. § 636(b)(1)(B), who recommended that Nowaczyk's motion for reconsideration be granted.[2]  The magistrate judge reasoned that, since Nowaczyk's § 2254 petition was no longer "mixed," but presented only exhausted claims, it was not subject to dismissal.  He rejected the state's argument that dismissal was warranted because Nowaczyk's second application for state post-conviction review (raising the double jeopardy claim) still was pending before the state courts.  Although principles of comity and judicial economy mandate dismissal of any unexhausted claims, see Rose v. Lundy, 455 U.S. 509, 518-20 (1982), the magistrate judge found those principles inapplicable in Nowaczyk's case, "since the State courts have already had an opportunity to consider each of the issues raised in the federal petition."  Because the claims presented in Nowaczyk's § 2254 petition were fully exhausted and properly before the district court, the magistrate judge concluded that dismissal would be "inconsistent with the imperative that underscores all habeas corpus proceedings:  ensuring that federal constitutional claims may be reviewed promptly in a federal forum if State remedies have been exhausted."  See Braden v. 30th Judicial Cir. Ct., 410 U.S. 484, 490 (1973) (explaining that the exhaustion doctrine reflects "a careful balance between important

_____

[2] The magistrate judge construed the motion as a motion to alter or amend the judgment, filed under Rule 59(e) of the Federal Rules of Civil Procedure.

-6-

interests of federalism and the need to preserve the writ of habeas corpus as a swift and imperative remedy in all cases of illegal restraint or confinement" (internal quotation marks omitted)).

The district court rejected the magistrate judge's recommendation and dismissed Nowaczyk's § 2254 petition without prejudice. The court agreed that Nowaczyk's petition presented only exhausted claims. However, it concluded that dismissal was appropriate because of the pendency of Nowaczyk's second application for state post-conviction review. That application contained a challenge to the same conviction Nowaczyk sought to overturn through the federal habeas proceedings, and "Nowaczyk did not raise any unusual circumstances about the state court actions, such as extraordinary delay, that would justify concurrent actions." In the district court's view, the principles of comity discussed in Rose counseled in favor of "defer[ring] to the state court action" in such a case.

The court then turned to the question of AEDPA's statute of limitations. It assumed, without deciding, that since Nowaczyk had not attempted to appeal his conviction to the United States Supreme Court, he was not entitled to the benefit of the 90-day period for seeking a writ of certiorari. Accordingly, the court concluded that the statute of limitations began to run on January 24, 1997 -- the date of the New Hampshire Supreme Court's final decision in Nowaczyk's direct appeal.

The next question was the extent to which the statute of limitations was tolled by Nowaczyk's various filings. The district

court determined that Nowaczyk's § 2254 petition -- if dismissed without prejudice on the ground of comity -- would not itself toll the limitations period for any subsequently-filed petition. However, under AEDPA, the statute of limitations would be tolled whenever a state-court challenge to "the pertinent judgment or claim" was pending.  28 U.S.C. § 2244(d)(2).  The parties agreed that the statute was tolled during the pendency of Nowaczyk's first application for state post-conviction review, which raised the judicial bias claim presented in his § 2254 petition.  The more difficult question was whether his second application had a tolling effect even though it concerned a claim that was not included in the § 2254 petition.  The district court answered that question in the affirmative, reasoning that the second application challenged Nowaczyk's conviction -- "the pertinent judgment" for purposes of his § 2254 petition -- and therefore satisfied AEDPA's tolling provision.

Thus, the court found that the statute of limitations had run between January 24, 1997, and October 28, 1997 (when Nowaczyk filed his first application for state post-conviction review), and then was tolled by the (still pending) state proceedings.  Because Nowaczyk would have "some time, but not the full year," to refile his § 2254 petition at the conclusion of the state proceedings, the district court concluded that dismissal still was appropriate. Nevertheless, it ended its opinion with a warning:  "Once [Nowaczyk's] pertinent state court proceedings are concluded, the limitations period will again begin to run until it quickly

expires. Therefore, if issues remain at the conclusion of the state court proceedings that are appropriate for habeas relief, Nowaczyk should be mindful of the diminished limitation period that remains."

The district court entered judgment dismissing Nowaczyk's petition without prejudice on March 9, 1999. Nowaczyk promptly appealed to this court. On March 26, 1999, the New Hampshire Supreme Court rejected Nowaczyk's double jeopardy claim. That decision marked the end of Nowaczyk's second application for state post-conviction review, and therefore started AEDPA's statute of limitations running once again. The same day, Nowaczyk filed a motion asking permission to supplement the record on appeal to reflect the fact that he no longer had any claims pending before the state courts. We granted that motion by order dated April 28, 1999.

After an initial round of briefing by the parties -- with Nowaczyk still proceeding pro se -- it was apparent that one of the issues on appeal was whether the district court erred in concluding that Nowaczyk's § 2254 petition did not operate to toll AEDPA's statute of limitations. The Supreme Court had granted certiorari to address that question in Duncan v. Walker, and we decided to stay consideration of Nowaczyk's appeal until the Court issued its opinion.

The Supreme Court decided Duncan in June of 2001, holding that the statute of limitations is tolled only by applications for state post-conviction review, and that later-dismissed federal

habeas petitions do not have any tolling effect. 533 U.S. 167, 181-82 (2001). The upshot of that decision for Nowaczyk was clear: if we affirmed the dismissal of his § 2254 petition by the district court in March of 1999, the fact that it had been pending before the federal courts for roughly four years would have no impact on the statute of limitations. Absent equitable tolling, the AEDPA one-year limitations period would have expired for Nowaczyk in September of 2000, and any subsequent petition would be time barred.

Following the Supreme Court's decision in <u>Duncan</u>, we appointed counsel for Nowaczyk, ordered supplemental briefing, and scheduled oral argument. We instructed counsel to focus on three questions: whether the district court erred in holding that Nowaczyk's second application for state post-conviction review tolled AEDPA's statute of limitations; whether the district court abused its discretion in dismissing, rather than staying, Nowaczyk's § 2254 petition, given the statute of limitations concerns; and whether, if we concluded that dismissal was appropriate, Nowaczyk would be entitled to equitable tolling when he attempted to refile his habeas petition.

In its supplemental brief and again at oral argument, the state conceded that Nowaczyk's second application for state post-conviction review tolled the limitations period. <u>See</u> <u>Tillema</u> v. <u>Long</u>, 253 F.3d 494, 502 (9th Cir. 2001) (holding that "AEDPA's period of limitation is tolled during the pendency of a state application challenging the pertinent judgment, even if the

-10-

particular application does not include a claim later asserted in the federal habeas petition"); accord Carter v. Litscher, 275 F.3d 663 (7th Cir. 2001) (same). But see Austin v. Mitchell, 200 F.3d 391 (6th Cir. 1999) (adopting contrary view). Accordingly, we focus on the question whether the district court should have stayed the federal proceedings rather than dismissing Nowaczyk's petition outright. We conclude that, under the circumstances of this case, the district court abused its discretion in dismissing Nowaczyk's § 2254 petition. Accordingly, we need not decide whether the doctrine of equitable tolling is available under AEDPA generally, see, e.g., Donovan, 276 F.3d at 92-93 (reserving the question), and, if so, whether it would apply in this case.

## II.

Before we can reach the issue of stay versus dismissal, we first must address a threshold question: did the district court err in delaying its decision through either means? Put differently, was the court obligated to adjudicate Nowaczyk's claims immediately?[3] We turn to that question.

## A.        Delay vs. Immediate Adjudication

In Rose v. Lundy, 455 U.S. 509 (1982), the Supreme Court held that "mixed" § 2254 petitions -- that is, those containing both exhausted and unexhausted claims -- must be dismissed for

---

[3] We use the term "immediately" simply as shorthand for proceeding in the normal course of federal adjudication, without regard to the pending state proceedings. Similarly, we use the term "delay" to refer to deferring federal proceedings until state court proceedings are resolved.

failure to exhaust state remedies. The Court reasoned that such a rule would "further[] the policy of comity underlying the exhaustion doctrine." Id. at 514. Requiring "total exhaustion" would "encourage state prisoners to seek full relief first from the state courts, thus giving those courts the first opportunity to review all claims of constitutional error." Id. at 518-19. Moreover, "federal claims that have been fully exhausted in state courts will more often be accompanied by a complete factual record to aid the federal courts in their review." Id. at 519.

The district court relied on that same policy of comity as a basis for dismissing Nowaczyk's § 2254 petition. It reasoned that, although the claims presented in the petition had been fully exhausted, the fact that Nowaczyk still was challenging his conviction in state court brought his case within Rose's purview. The court observed that the comity doctrine not only "protect[s] the state court's concurrent jurisdiction to enforce federal law"; it also "'prevent[s] disruption of state judicial proceedings' by teaching that '"one court should defer action on causes properly within its jurisdiction until the courts of another sovereignty with concurrent powers, and already cognizant of the litigation, have had an opportunity to pass on the matter."'" (Quoting Rose, 455 U.S. at 518 (quoting Darr v. Burford, 339 U.S. 200, 204 (1950)). Because the state courts had not yet had a full opportunity to pass on one of Nowaczyk's challenges to his conviction -- the double jeopardy claim -- the district court felt

-12-

itself bound to "defer action" on the related challenges contained in the § 2254 petition.

Nowaczyk argues that Rose does not support the district court's decision to dismiss his petition. He maintains that the rule of total exhaustion is not based on avoiding parallel state-federal proceedings. Rather, Nowaczyk argues, Rose's core holding was that federal courts should not grant relief on claims that have not yet been presented to the state courts. Consistent with that view, Rose directed district courts to offer a choice to state prisoners with mixed petitions: they could either accept dismissal without prejudice and return to state court to exhaust the claims presented in their § 2254 petitions, or they could amend those petitions to remove any unexhausted claims. See Rose, 455 U.S. at 510. If the prisoner chose the latter option, the district court would adjudicate the remaining (exhausted) claims immediately, notwithstanding the fact that the other unexhausted claims might be pending before the state courts at the same time.

We agree that Rose does not require the district court to withhold decision in cases such as Nowaczyk's. See Hurd v. Mondragon, 851 F.2d 324, 327-28 (10th Cir. 1988) (concluding that Rose is not controlling where the state prisoner has exhausted his state remedies on the claims presented in his § 2254 petition, but he has other claims that have not been exhausted); Jones v. Parke, 734 F.2d 1142, 1145 (6th Cir. 1984) (same). If anything, it points in the opposite direction. Rose held that a state prisoner who has both exhausted and unexhausted claims can obtain prompt federal

review of the exhausted claims if he files a mixed petition and then amends it to remove the unexhausted claims. See 455 U.S. at 510; Lacy v. Gabriel, 732 F.2d 7, 12 (1st Cir. 1984) (emphasizing that, under Rose, the petitioner "was entitled all along to present only a part of the claims available to him"). We see no reason why a prisoner with a mixed petition should be better off than one whose petition contains only exhausted claims. But that is the oddity implicit in the district court's reasoning. Under Rose, the state prisoner with a mixed petition is entitled to proceed with his exhausted claims if he agrees to amend his petition. Under the district court's approach, however, the state prisoner with a petition containing only exhausted claims is forbidden to proceed with those claims until he adjudicates any unexhausted claims in state court. That distinction makes little sense, and we do not believe Rose compels it.

In addition to Rose, the district court also relied on cases such as Sherwood v. Tomkins, 716 F.2d 632 (9th Cir. 1983). There, the petitioner had been convicted of manslaughter in state court and, in the course of appealing that conviction, lodged several requests for appointed counsel and a free transcript. The state courts denied his requests and, while his state appeal still was pending, Sherwood filed a § 2254 petition challenging those denials. The Ninth Circuit held that Sherwood had failed to exhaust his state remedies with respect to his claim of indigency, and affirmed the dismissal of the § 2254 petition on that ground. See id. at 633-34. The court went on to note, in dicta, that

-14-

"[w]hen, as in the present case, an appeal of a state criminal conviction is pending, a would-be habeas corpus petitioner must await the outcome of his appeal before his state remedies are exhausted, even where the issue to be challenged in the writ of habeas corpus has been finally settled in the state courts." Id. at 634.

The Ninth Circuit reached a similar conclusion -- this time not in dicta -- in Edelbacher v. Calderon, 160 F.3d 582 (9th Cir. 1998), another case cited by the district court. Edelbacher's state conviction was affirmed on direct appeal, but his death sentence was vacated. Before the penalty-phase retrial had begun, Edelbacher filed a § 2254 petition challenging his conviction. The Ninth Circuit concluded that the petition was premature, holding that the district court should not entertain a federal habeas proceeding in the absence of a penalty phase judgment "or until the existence of extremely unusual circumstances warrant[s] an exception." Id. at 585.

We are not persuaded that Sherwood and Edelbacher support the district court's conclusion that dismissal was required in Nowaczyk's case. The dicta in Sherwood suggests that a state prisoner has not exhausted state remedies until he completes his direct appeal from his conviction and sentence. It therefore has little relevance here: Nowaczyk completed his direct appeal before he filed his § 2254 petition, and the district court did not suggest that dismissal was warranted because of any failure to exhaust state remedies.

Nor do we believe that <u>Edelbacher</u> stands for the broad rule that federal courts must dismiss § 2254 petitions whenever the petitioner is in the process of adjudicating other, related claims in the state courts. As we explained above, such a rule would be inconsistent with <u>Rose</u>, and we doubt the Ninth Circuit intended to adopt it <u>sub silentio</u>.[4] The better view is that <u>Edelbacher</u> held precisely what it said: that, in the absence of unusual circumstances, a state prisoner cannot proceed with his § 2254 petition when the state trial court has not yet rendered a decision as to the proper penalty.[5] Obviously, that rule is not implicated here.

In any event -- as the district court recognized -- other circuits have rejected the broad rule that a state prisoner cannot adjudicate his fully-exhausted claims under § 2254 when other

---

[4] Indeed, in the wake of AEDPA, the Ninth Circuit has taken pains to protect a state prisoner's right to adjudicate any exhausted claims promptly. <u>See</u> <u>Tillema</u>, 253 F.3d at 503 (holding that "the district court committed prejudicial legal error when it dismissed Tillema's first federal habeas petition without affording him the opportunity to abandon his sole unexhausted claim as an alternative to suffering dismissal"); <u>Anthony</u> v. <u>Cambra</u>, 236 F.3d 568, 574 (9th Cir. 2000) (holding that "outright dismissal" of a mixed petition without leave to amend was "improper," and emphasizing that "district courts must provide habeas litigants with the opportunity to amend their mixed petitions by striking unexhausted claims").

[5] There are sound reasons for such a rule, at least in cases like <u>Edelbacher</u>, where the state prisoner was eligible for (and initially received) a death sentence. As the Ninth Circuit explained, the federal habeas court needs to know whether the prisoner's case is "capital" or "non-capital" before it can proceed, because that designation determines which procedures will govern the habeas proceedings. <u>See</u> <u>Edelbacher</u>, 160 F.3d at 585; 28 U.S.C. §§ 2261-2266 (setting out special procedures for prisoners who are subject to a capital sentence).

-16-

claims have not yet been decided by the state courts. See, e.g., Pringle v. Court of Common Pleas, 744 F.2d 297, 300 (3d Cir. 1984) (holding that the district court erred in concluding that the state prisoner could not proceed under § 2254 on exhausted claims regarding her conviction until she exhausted other claims regarding her sentence); cf. Lacy, 732 F.2d at 12 (holding that the district court cannot transform a fully exhausted petition into a mixed one by raising an unexhausted claim sua sponte); Williams v. Maggio, 727 F.2d 1387, 1389 (5th Cir. 1984) (similar); Butler v. Rose, 686 F.2d 1163, 1167 (6th Cir. 1982) (similar). Thus, we adhere to our initial view that the district court was not required to delay its decision on Nowaczyk's fully-exhausted claims until the conclusion of the state proceedings. See Jones v. Wainwright, 608 F.2d 180, 181 (5th Cir. 1979) (holding that petition need not be dismissed "when the petitioner does not urge unexhausted grounds for relief but the state claims that such grounds may be asserted in the future"); United States ex rel. Boyance v. Myers, 372 F.2d 111, 112 (3d Cir. 1967) ("It is no bar to federal adjudication of the merits of the present claim that a separate claim for relief on a different ground is pending in a state court.").

The question remains, however, whether such a delay was permitted. We hold that it was. See Calderon v. United States Dist. Ct., 134 F.3d 981 (9th Cir. 1998) ("[T]he fact that the district court was not required . . . to hold [the state prisoner's] exhausted petition in abeyance does not necessarily imply that the district court was without discretion to do so.").

-17-

As the district court pointed out, if Nowaczyk had prevailed on his double jeopardy claim, there likely would have been no need to continue with the federal habeas proceedings. Considerations of judicial economy support the district court's decision to withhold decision on claims that could have been mooted by the pending state proceedings. Moreover, although Rose's policy of comity did not require the district court to "defer action" until the conclusion of the state proceedings, 455 U.S. at 518, such a delay certainly is consistent with that policy.[6]

Not surprisingly, therefore, other courts to consider the question have held that Rose does not foreclose the option of delaying consideration of exhausted claims pending resolution of other, unexhausted claims. In Thompson v. Wainwright, 714 F.2d 1495 (11th Cir. 1983), for example, the Eleventh Circuit held that the district court acted within its discretion in staying decision on the state prisoner's § 2254 petition -- which contained only exhausted claims -- while the petitioner presented an additional, unexhausted claim to the state courts. The court rejected as "patently without merit" the state's argument that the district court was obligated by Rose to decide the unexhausted claims immediately. Id. at 1499. "The [district] court has the power to control its docket. So long as it abides by the limits of

_____

   [6] We note that, at the time of the district court's decision on remand, Nowaczyk's second application for post-conviction review already had worked its way to the New Hampshire Supreme Court. Thus, any delay was likely to be short -- and, in fact, the New Hampshire Supreme Court issued its decision within weeks of the district court's judgment.

discretion, it can leave a habeas petition dormant on its docket while the petitioner presents to the state court unexhausted claims." Id.

Similarly, in Calderon, the Ninth Circuit reasoned that "'[a] district court has discretion to stay a petition which it may validly consider on the merits.'" 134 F.3d at 987 (quoting Greenawalt v. Stewart, 105 F.3d 1268, 1274 (9th Cir. 1997)). It rejected the view that Rose stood in the way of such a stay, explaining that the Court in Rose "did not . . . intimate that those petitioners who opted for amendment were required to proceed posthaste on their remaining claims." Id. at 988 n.10; see also Burris v. Farley, 51 F.3d 655, 659 (7th Cir. 1995) (indicating that district court can stay decision on exhausted claims until state prisoner exhausts any remaining issues); Fetterly v. Paskett, 997 F.2d 1295 (9th Cir. 1993) (holding that district court abused its discretion in denying the state prisoner's request that it stay decision on his § 2254 petition so that he could exhaust a newly-discovered claim in the state courts).

These cases support the district court's decision to delay adjudication of Nowaczyk's fully-exhausted claims until the resolution of the related state proceedings. We conclude that such delay was permissible here. We turn, therefore, to the question of what form the delay should have taken.

**B.     Stay vs. Dismissal**

It appears that the question of stay versus dismissal in cases involving only fully-exhausted claims is one of first

-19-

impression. However, several courts have addressed a related question: the propriety of dismissal in post-AEDPA cases involving mixed petitions. Those cases are instructive here.

When Rose was decided, there was no time limit on petitions filed under § 2254. Thus, there was little cost to a dismissal without prejudice -- the state prisoner could refile the petition at any time following exhaustion of his federal claims. AEDPA changed matters. Its one-year statute of limitations "has rendered outright dismissal perilous to some litigants, because petitioners . . . may find themselves time-barred when they attempt to resubmit their exhausted claims to the district court." Anthony v. Cambra, 236 F.3d 568, 573 (9th Cir. 2000). Recognizing the risks attendant to dismissal in the post-AEDPA world, several courts have concluded that a stay is "the right step to take" in cases involving mixed petitions. Newell v. Hanks, 283 F.3d 827, 834 (7th Cir. 2002); Zarvela v. Artuz, 254 F.3d 374, 379-80 (2d Cir. 2001) (concluding that "the enactment of AEDPA warrants some adjustment in the pre-AEDPA requirement of Rose v. Lundy that mixed petitions be dismissed in their entirety," and that, "[i]n many cases, a stay will be preferable"); see also Duncan, 533 U.S. at 182-83 (Stevens, J., concurring) ("[I]n our post-AEDPA world there is no reason why a district court should not retain jurisdiction over a meritorious claim and stay further proceedings pending the complete exhaustion of state remedies."). But see Graham v. Johnson, 168 F.3d 762, 779-80 (5th Cir. 1999) (disapproving of open-ended stays of mixed petitions). Indeed, there is a growing

consensus that a stay is <u>required</u> when dismissal could jeopardize the petitioner's ability to obtain federal review. <u>See</u>, <u>e.g.</u>, <u>Zarvela</u>, 254 F.3d at 380 (holding that a stay "will be the only appropriate course" where outright dismissal could jeopardize the timeliness of any subsequent petition); <u>Freeman</u> v. <u>Page</u>, 208 F.3d 572, 577 (7th Cir. 2000) ("[D]ismissal is not appropriate when that step could jeopardize the timeliness of a collateral attack."); <u>see also</u> <u>Palmer</u> v. <u>Carlton</u>, 276 F.3d 777, 781 (6th Cir. 2002) (noting that the Second Circuit's approach in <u>Zarvela</u> "is eminently reasonable").

Although none of our cases has turned on the question of stay versus dismissal, we have indicated that district courts presented with mixed petitions should take seriously any request for a stay. In <u>Neverson</u> v. <u>Bissonnette</u>, 261 F.3d 120, 126 n.3 (1st Cir. 2001), we noted that "the petitioner could have improved his position by requesting that the district court stay, rather than dismiss, Petition No. 1. Post-AEDPA, this will be the preferable course in many cases involving 'mixed' petitions -- and it may be the only appropriate course in cases in which an outright dismissal threatens to imperil the timeliness of a collateral attack." We reiterated that view in <u>Delaney</u> v. <u>Matesanz</u>, 264 F.3d 7, 13 n.5 (1st Cir. 2001), where we "especially commend[ed]" the use of stays "in instances in which the original habeas petition, though unexhausted, is timely filed, but there is a realistic danger that a second petition, filed after exhaustion has occurred, will be untimely."

-21-

The state points out that neither <u>Neverson</u> nor <u>Delaney</u> compels a stay in the circumstances of this case. When the district court entered judgment in March of 1999, the statute of limitations was still being tolled by Nowaczyk's second application for state post-conviction review, and several months would remain in the limitations period when the clock started running again.[7] Moreover, the district court warned Nowaczyk that he would need to return promptly to federal court as soon as the state courts decided the double jeopardy claims presented in his second application for post-conviction review. Accordingly, if Nowaczyk's petition still had been "mixed," <u>Neverson</u> and <u>Delaney</u> probably would not have prevented the district court from dismissing it.

But therein lies the problem. In both <u>Neverson</u> and <u>Delaney</u>, the district court was presented with a § 2254 petition that contained unexhausted claims. Thus, it did not have the option of adjudicating the petition immediately. Unless the petitioner agreed to amend the petition to drop the unexhausted claims, the district court had no choice but to delay decision until the prisoner completed the process of exhaustion.

---

[7] Under the district court's computation (which excluded the 90-day period for seeking certiorari from the United States Supreme Court), the statute of limitations had run for approximately nine months when Nowaczyk filed his first application for state post-conviction review in October of 1997, leaving roughly three months to go. Nowaczyk and the state maintain -- and we agree, <u>see</u> <u>Donovan</u>, 276 F.3d at 91 -- that the statute of limitations did not begin to run until after the 90-day certiorari period. On that view, approximately six months remained in the limitations period when the New Hampshire Supreme Court rejected Nowaczyk's second application for state-post conviction review.

The situation here is critically different. Nowaczyk's petition contained only exhausted claims. Nothing prevented the district court from adjudicating those claims immediately; indeed, Nowaczyk urged it to do so. Although we have determined that the district court did not abuse its discretion in withholding decision while Nowaczyk's second application for state post-conviction relief was pending, it bears emphasis that -- unlike cases involving mixed petitions -- such delay was not required here. It is one thing to say that a district court may choose between a stay and dismissal when a flaw in the § 2254 petition makes it necessary to delay decision through some means. It is quite another to say that the court may dismiss a petition that is properly before it and ready for decision.

The state has not even attempted to defend that proposition. Instead, relying on cases such as Sherwood, it seeks to show that Nowaczyk's petition was not, in fact, ready for decision. We rejected that view above. We explained that the district court's decision to delay action on Nowaczyk's petition was not compelled by Rose or by the principles of comity on which the total exhaustion rule is based. That decision was permissible, however, as an exercise of the district court's "power to control its docket," Thompson, 714 F.2d at 1499, and in the interest of comity. The question here is whether that power to delay embraces the discretion to dismiss an action properly before the court and within its statutory jurisdiction. We think not.

We conclude that "[w]hen unusual circumstances" -- rather than a flaw in the petition itself -- "make it imprudent to address the § 2254 petition immediately, the collateral attack should be stayed rather than dismissed." Post v. Gilmore, 111 F.3d 556, 557 (7th Cir. 1997). This case is unusual because Nowaczyk was in the process of adjudicating his double jeopardy claim in the state courts, yet made no effort to include that claim in his § 2254 petition. He expressed no interest in delaying the federal proceedings until the resolution of his second application for state post-conviction review; nor did he seek to amend his § 2254 petition to include the claim of double jeopardy. Rather, he was ready and willing to adjudicate the fully-exhausted claims presented in that petition immediately.

Thus, Nowaczyk's case differs from those discussed in the previous section, which affirm the district court's discretion to delay resolution of a fully-exhausted petition so that the petitioner can exhaust other claims in state court and, if necessary, amend his federal petition to include them. It is notable that none of those cases so much as suggested that dismissal was a viable option. Rather, the courts clearly understood the choice to be between immediate adjudication or a stay. See, e.g., Anthony, 236 F.3d at 575 ("Our precedent unequivocally authorizes district courts to stay fully exhausted federal petitions . . . .") (emphasis added); Thompson, 714 F.2d at 1500 (affirming district court's decision to stay decision on exhausted claims although the district court also "could have

-24-

denied a delay [and] decided the issues that were alleged in the petition"). If outright dismissal of a fully-exhausted petition is disfavored even when the petitioner asked the court to withhold decision on his claims, it is even more inappropriate where, as here, the petitioner resisted any such delay. See Jones, 608 F.2d at 183 (holding that district court erred in dismissing a fully-exhausted petition on the ground that other, unexhausted, claims might be asserted in the future); Myers, 372 F.2d at 112 (holding that district court erred in dismissing, rather than adjudicating, a fully-exhausted claim where another claim was still pending before the state courts).

The reason for such a rule is fairly simple. Although habeas relief is an equitable remedy, "a district judge may not remit [§ 2254] petitioners to their other remedies, the way a judge may decline to issue declaratory relief." Post, 111 F.3d at 557. Rather, like other civil actions, § 2254 petitions are "governed by the norm that a district court must exercise its full statutory jurisdiction." Id.; see also Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 817 (1976) (noting "the virtually unflagging obligation of the federal courts to exercise the jurisdiction given them"). That norm is violated when the district court dismisses a petition that is properly before it and within its jurisdiction under AEDPA. A stay does not suffer from the same infirmity. Because the district court retains jurisdiction over the petition during the course of a stay, that procedure does not "involve the abdication of federal jurisdiction,

-25-

but only the postponement of its exercise."  Harrison v. NAACP, 360

U.S. 167, 177 (1959) (discussing a form of abstention under which

the district court retains jurisdiction over the federal action

pending proceedings in state court).[8]

Of course, the "norm" that a district court must exercise

its full jurisdiction is just that -- a norm -- and can give way in

the face of countervailing demands.  See, e.g., Colorado River, 424

U.S. at 813 (explaining that "exceptional circumstances" may permit

abstention from "the duty of a District Court to adjudicate a

controversy properly before it").  Thus, we do not adopt a bright-

line rule that a district court may never dismiss a fully-exhausted

petition.  However, in order to justify a departure from the "heavy

---

[8] We recognize that, in certain circumstances, "a stay is as
much a refusal to exercise federal jurisdiction as a dismissal."
Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 28
(1983).  That is so, for example, when the district court enters a
stay under the Colorado River doctrine on the ground that "parallel
state-court litigation will be an adequate vehicle for the complete
and prompt resolution of the issues between the parties."  Id.  In
such a case, the expectation "is that the controversy will be
resolved in the state court proceeding, and that if the party
returns to federal court after the state action is over, the most
that will be needed is to dispose of the federal suit on principles
of res judicata or collateral estoppel."  Charles A. Wright, Arthur
R. Miller & Edward H. Cooper, 17A Federal Practice and Procedure
§ 4247, at 136 (2d ed. 1994).  It therefore makes no difference
whether the district court enters a stay or dismisses the case
outright:  either way, the parties will be forced to adjudicate
their claims in state, rather than federal, court.
    That is not the situation here.  The state courts' resolution
of Nowaczyk's double jeopardy claim against him would not prevent
Nowaczyk from asserting that claim or any of his other claims in
the federal habeas proceedings.  At most, a ruling in Nowaczyk's
favor on the double jeopardy claim would have rendered the federal
proceedings unnecessary, because Nowaczyk already would have
obtained the relief he desired.  Thus, in staying its hand until
the resolution of the state court proceedings, the district court
would postpone, rather than abdicate, its exercise of jurisdiction
over those claims.

obligation to exercise jurisdiction," id. at 820, there must be some compelling reason to prefer dismissal over a stay. Such a justification is wholly lacking here. As the state conceded at oral argument, the comity concerns on which the district court relied are adequately served by a stay. Indeed, staying Nowaczyk's fully-exhausted petition would seem to be the most obvious way to "defer action . . . until" the state courts had a full opportunity to pass on the double jeopardy claim, Rose, 455 U.S. at 518. See Zarvela, 254 F.3d at 380 (noting that "[s]taying the exhausted claims would be a traditional way" to satisfy Rose's policy of comity). Most importantly, a stay would serve the interest of comity while, at the same time, protecting Nowaczyk's interest in adjudicating his federal constitutional claims in federal court.

The state argues vaguely that dismissal would relieve the district court of the burden of keeping track of the case. It is not clear that leaving the case on the court's docket would be particularly taxing, and the state has made no effort to explain the point. But even if we assume that a stay would cause some additional administrative burden, such a minor inconvenience hardly outweighs the district court's obligation to exercise its jurisdiction under AEDPA.

Finally, the state emphasizes that the district court did not ask much of Nowaczyk: all he had to do was refile the same petition he filed in June of 1997. That is beside the point. As we have explained, the district court has an affirmative obligation to adjudicate claims, such as Nowaczyk's, that are properly before

-27-

it. Thus, it is irrelevant that Nowaczyk easily could have refiled his petition. The same could be said of any civil complaint, but that clearly would not justify dismissing it. Rather, whatever administrative inconvenience resulted from the district court's decision to delay resolution of Nowaczyk's claims -- the burden of keeping track of the case, as the state puts it -- should have been borne by the court, not Nowaczyk.

Under AEDPA, pro se prisoners seeking to adjudicate their constitutional claims in federal court must satisfy several complex procedural requirements that often are difficult even for courts to decipher. See, e.g., Carey v. Saffold, 122 S. Ct. 2134 (2002) (resolving a circuit split on the question when an application for state post-conviction review is "pending" under AEDPA's tolling provision); Duncan v. Walker, 533 U.S. 167 (2001) (same, on the question whether later-dismissed § 2254 petitions toll AEDPA's statute of limitations); Artuz v. Bennett, 531 U.S. 4 (2000) (same, on the question when an application for state post-conviction review is "properly filed" under AEDPA's tolling provision); Slack v. McDaniel, 529 U.S. 473 (2000) (same, on the question whether petitions filed after an earlier petition is dismissed for failure to exhaust state remedies are subject to the prohibition on "second or successive" petitions). When a prisoner manages to make his way through the procedural thicket and places his timely, fully-exhausted claims before the district court, we do not think he should be turned away with dismissal of his action on the basis of an insubstantial claim of administrative convenience.

## III.

In summary, we hold that the district court abused its discretion in denying Nowaczyk's motion for reconsideration and dismissing his fully-exhausted § 2254 petition. AEDPA's one-year statute of limitations expired while this appeal was pending. Thus, if we had affirmed the dismissal of Nowaczyk's first § 2254 petition, a serious question would have arisen as to whether he would be permitted to file a second petition at this time.

That Nowaczyk's claims were properly before the district court, ready for adjudication, is critical to our decision. Nowaczyk urged prompt action. The district court has an obligation to adjudicate claims, like Nowaczyk's, that are within its statutory jurisdiction. Although the question is close, we conclude that the court is entitled to delay decision on such claims when considerations of comity and judicial economy would be served. However, something more than related claims pending in state court is needed before the court may dismiss a fully-exhausted petition outright. Such dismissal has always been difficult to square with the court's obligation to exercise the jurisdiction given it by Congress. AEDPA raises the stakes: its complex procedural requirements heighten the risk that a dismissal without prejudice will, in practice, result in a dismissal with prejudice, as happened here.

In the face of those concerns, the district court cited the general interest in federal-state comity as a reason for dismissing Nowaczyk's petition. But that interest is served

-29-

equally well by a stay; it cannot justify the court's choice of the more extreme measure of dismissal. The state points to the administrative burden, identified as keeping track of the case, associated with retaining jurisdiction over Nowaczyk's case. That is not enough. If the court's obligation to exercise its statutory jurisdiction means anything, it cannot possibly be trumped by such a trivial inconvenience. Indeed, an obligation that dissolves at the first pinch of inconvenience is no obligation at all.

We have said that an "[a]buse [of discretion] occurs when a material factor deserving significant weight is ignored, when an improper factor is relied upon, or when all proper and no improper factors are assessed, but the court makes a serious mistake in weighing them." Fashion House, Inc. v. K Mart Corp., 892 F.2d 1076, 1081 (1st Cir. 1989) (internal quotations omitted). Here, the factors on which the district court relied do not support its decision to dismiss Nowaczyk's petition rather than retain jurisdiction and enter a stay. Given the difficulties associated with dismissal in general of a claim properly before the court -- and under AEDPA in particular -- that decision constituted an abuse of discretion.

It appears that Nowaczyk no longer has any claims pending before the state courts. Accordingly, we remand his § 2254 petition to the district court for decision on the merits of the claims presented therein.[9]

---

[9] Nowaczyk also argued that the statute of limitations should be equitably tolled to permit him to file another petition. Given our conclusion that the district court erred in dismissing

-30-

**<u>Reversed and remanded</u>**.

---

Nowaczyk's first petition, we express no view as to the availability of equitable tolling, either under AEDPA generally, or in the specific circumstances of this case.

-31-

**APPENDIX**

To assist the reader, we set forth the following chronology of important dates:

January 24, 1997:     End of Nowaczyk's direct appeal.

April 24, 1997:       End of 90-day certiorari period. Parties agree that AEDPA statute of limitations began running on this date.

June 20, 1997:        Nowaczyk files his § 2254 petition.

October 28, 1997:     Nowaczyk files his first application for state post-conviction relief, raising the claim of judicial bias. Tolling begins.

May 10, 1998:         Nowaczyk files his second application for state post-conviction relief, raising the claim of double jeopardy.

July 22, 1998:        District court dismisses Nowaczyk's § 2254 petition for failure to exhaust state remedies.

July 24, 1998:        Nowaczyk files a notice of appeal from the district court's judgment.

July 31, 1998:        New Hampshire Supreme Court rejects the judicial bias claim presented in Nowaczyk's first application for state post-conviction relief. (Tolling continues because second application is still pending.)

August 1, 1998:       Nowaczyk files a motion for reconsideration in the district court.

August 28, 1998:      District court denies Nowaczyk's motion for reconsideration as "moot."

November 9, 1998:     We remand the case to the district court for consideration of the merits of Nowaczyk's motion for reconsideration.

March 9, 1999:        District court denies Nowaczyk's motion for reconsideration and dismisses his § 2254 petition without prejudice.

March 9, 1999:        Nowaczyk files a notice of appeal from the district court's judgment.

-32-

March 26, 1999:          New Hampshire Supreme Court rejects the
                         double jeopardy claim presented in
                         Nowaczyk's second application for state
                         post-conviction relief.  Tolling ends; the
                         statute of limitations begins running again
                         with approximately six months remaining.

September 19, 2000:      Statute of limitations expires while
                         Nowaczyk's appeal from the dismissal of his
                         petition by the district court is pending
                         before us.