**Louis LAURORE, Petitioner,**

v.

**Luis SPENCER, Respondent.**

**No. CIV.A. 02–12022WGY.**

United States District Court,
D. Massachusetts.

Nov. 2, 2005.

Natalie S. Monroe, Attorney General's Office, Boston, MA, for Luis Spencer, Respondent.

Susanne G. Reardon, Attorney General's Office, Boston, MA, for Luis Spencer, Respondent.

*MEMORANDUM AND ORDER*

YOUNG, Chief Judge.

## I. INTRODUCTION

Louis Laurore ("Laurore"), proceeding pro se, brings this petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. In the petition, he challenges his conviction in the Massachusetts Superior Court for first degree murder, armed assault with intent to murder, and violation of an abuse and protection order. Resp't Answer Am. Pet. for Writ of Habeas Corpus I ("Answer I") [Doc. No. 21] ¶ 4. Laurore moves to drop grounds five, six, and seven of his Amended Petition and stay consideration of the petition while he returns to Massachusetts Superior Court to exhaust three completely new claims. Pet'r Mot. to Drop Unexh. Claims and for Stay and Abey. of Exh. Claims ("Pet'r Mot. Drop") [Doc. No. 31] at 1; Aff. of Louis Laurore ("Laurore Aff.") [Doc. No. 31, Attach. 1] ¶¶ 6–7.

For the reasons set forth in the following discussion, Laurore's motion is ALLOWED insofar as it seeks to drop grounds five, six, and seven of his amended petition. Insofar as his motion seeks to stay the petition, it is DENIED.

## II. FACTS AND PROCEDURAL POSTURE

On November 29, 1995, Laurore's wife was shot in the face at close range, in the presence of her young daughter. *Commonwealth v. Laurore*, 437 Mass. 65, 69, 769 N.E.2d 725 (2002). Later that day, Laurore's brother-in-law was shot in the shoulder and struck in the head with a gun, also in the presence of the young girl. *Id.* at 67–68, 769 N.E.2d 725. The next day, Laurore was arrested and subsequently charged as the perpetrator of these crimes. *Id.* at 66, 68, 769 N.E.2d 725.

On March 19, 1997, a Massachusetts jury convicted Laurore of first degree murder, armed assault with intent to murder, and violation of a restraining order. Resp't Supplemental App. ("Resp't App.") [Doc. No. 11] Ex. A at 9, 16. The court sentenced him to life in prison for the murder conviction and imposed an 18–20 year concurrent sentence for the assault conviction. *Id.* at 9, 10. On the day of his conviction, Laurore filed a timely notice of appeal directly to the Massachusetts Supreme Judicial Court pursuant to Mass. Gen. Laws, ch. 278, § 33E.

Prior to the Supreme Judicial Court's consideration of his appeal, Laurore moved for a new trial pursuant to section 30(b) of the Massachusetts Rules of Criminal Procedure, claiming seven constitutional and statutory errors. Resp't App. Ex. C at 144–51. While this motion was being considered by the Superior Court, the Supreme Judicial Court stayed consideration

of his direct appeal. Resp't App. Ex. A at 12. The Superior Court's subsequent denial of Laurore's motion for a new trial was consolidated with the direct appeal of his conviction. *See id.* at 12, 15.

The Supreme Judicial Court affirmed both the conviction and the denial of the motion for a new trial on June 6, 2002. *See Laurore,* 437 Mass. at 66, 769 N.E.2d 725. The ninety-day period during which Laurore could have filed a petition for certiorari in the United States Supreme Court ended on September 6, 2002. He chose not to seek further direct review.

Rather, on October 8, 2002, Laurore filed a petition for writ of habeas corpus in this Court pursuant to 28 U.S.C. § 2254 ("original petition"). Pet. Writ of Habeas Corpus [Doc. No. 4]. The Court allowed the respondent Luis Spencer ("Spencer") additional time to answer on November 21, 2002, and he did so on December 18, 2002, Resp't Answer I [Doc. No. 10], moving at the same time to dismiss the petition. Spencer argued that Laurore failed to exhaust three of the grounds in his petition in the state courts as required by 28 U.S.C. § 2254(b)(1). Resp't Mot. Dismiss Pet. Writ Habeas Corpus [Doc. No. 12]; Resp't Mem. Supp. Mot. Dismiss Pet. Writ Habeas Corpus [Doc. No. 13] at 1.

On December 26, 2002, prior to resolution of the motion to dismiss, Laurore moved to amend his petition to include two additional grounds. Pet'r Mot. Am. Pet. I [Doc. No. 14]. The Court allowed this motion, and Laurore filed his amended petition for writ of habeas corpus ("amended petition") on April 25, 2003. Am. Pet. for Writ of Habeas Corpus ("Am.Pet.") [Doc. No. 20]. On May 19, 2003, Spencer filed an amended answer to the amended petition and a motion to dismiss containing much the same argument he made in the previous (undecided) motion. Resp't Answer to Am. Pet. ("Answer II") [Doc. No. 21]; Resp't Mot. Dismiss Am. Pet. ("Mot. Dismiss II") [Doc. No. 22]; Resp't Mem. Supp. of Mot. Dismiss Am. Pet. ("Resp't Mem. Supp. II") [Doc. No. 23].

Initially, this Court allowed Spencer's motion, agreeing that three of the grounds had not properly been exhausted and that the case therefore should be dismissed under *Rose v. Lundy,* 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982). Order of 6/4/03. Upon Laurore's motion for reconsideration, however, the Court gave Laurore the choice of either amending his petition to delete the unexhausted claims or staying the petition while he returned to state court to exhaust those claims. Order of 6/19/03 [Doc. No. 25] at 14–15.

Approximately two weeks later, on July 7, 2003, Spencer moved for clarification of the order, arguing that an open-ended stay was improper. Resp't Mot. Recons. [Doc. No. 26] at 1. The Court agreed, and on July 21, 2003, amended its order to allow Laurore sixty days to return to state court to exhaust the claims and then thirty days after his claims were exhausted to proceed on the federal petition. Order of 7/21/03 [Doc. No. 27].

In response to this order, Laurore filed another motion for a new trial in the Massachusetts Superior Court, attempting to exhaust the unexhausted claims in the Amended Petition. Resp't Mot. Dismiss III [Doc. No. 30] Ex. 1 at 15. That court denied the motion on February 18, 2004. *Id.* To date, Laurore has yet to seek further review of the decision. Resp't Mot. Dismiss III at 2.

Taking note of Laurore's failure to proceed further on the unexhausted claims in state court, Spencer filed a motion with this Court on July 19, 2005 to dismiss the amended petition for failure diligently to exhaust the unexhausted claims. Resp't Mot. Dismiss III. The Court conditionally

allowed the motion, giving Laurore thirty days to delete the unexhausted claims and proceed with the petition. Order of 8/18/05.

Laurore now moves to delete the unexhausted claims from his petition and for a stay of the remainder so that he may exhaust three completely new claims in the state courts. Pet'r Mot. Drop. The motion was filed on September 7, 2005, well within the thirty day limit imposed by the Court's August 18, 2005 order. Spencer filed his opposition to this motion on September 21, 2005. Resp't Opp'n Pet.'s Mot. Drop [Doc. No. 32]. Spencer's opposition only challenges Laurore's request that the Court stay his petition. *Id.* at 1–2.

## III. DISCUSSION

### A. Existing Unexhausted Claims

Pursuant to this Court's August 18, 2005 Order, grounds five, six, and seven are ordered deleted from Laurore's amended petition. A decision on his request for a stay of the remaining claims in the petition, however, requires further analysis.

### B. Amending the Petition

Laurore styles his motion as a motion for stay and abeyance of unexhausted claims in the petition. In doing so, however, he omits one important step. Before Laurore can request that this Court stay the petition so that he may exhaust his new claims, he must further amend his petition to include these claims. As Laurore is proceeding pro se, the Court will treat his present motion as a motion to amend as well as to stay. *See Castro v. United States,* 540 U.S. 375, 381–82, 124 S.Ct. 786, 157 L.Ed.2d 778 (2003) (noting the federal courts' practice of recharacterizing pro se motions "in order to avoid an unnecessary dismissal, to avoid inappropriately stringent application of formal labeling requirements, or to create a better correspondence between the substance of a pro se motion's claim and its underlying legal basis." (internal citations omitted)).

To decide whether amendment of a federal habeas petition should be allowed, a court must look to the Federal Rules of Civil Procedure. *See* 28 U.S.C. § 2242 ("Application for writ of habeas corpus . . . may be amended or supplemented as provided in the rules of procedure applicable to civil actions."). Specifically, Rule 15(a) provides that leave to amend "shall be freely given when justice so requires." Fed.R.Civ.P. 15(a).

Rule 15 is particularly important in the context of federal habeas petitions, given the one year statute of limitations created by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). 28 U.S.C. § 2244(d)(1). As a result of this statute, any claim brought after the limitations period has run must relate back to the original petition to be considered timely. *Mayle v. Felix,* —— U.S. ——, ——, 125 S.Ct. 2562, 2566, 162 L.Ed.2d 582 (2005).

Rule 15 allows for amendments to relate back to the original date of the pleading when "the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." Fed.R.Civ.P. 15(c). In the context of habeas corpus, "the Rule 15 'relation back' provision is to be strictly construed, in light of Congress' decision to expedite collateral attacks by placing stringent time restrictions on [them]." *United States v. Ciampi,* 419 F.3d 20, 23 (1st Cir.2005) (internal quotation marks and citation omitted, alteration in original). A new claim must be similar "in both time and type" to a claim in the original petition for the new claim to relate back. *See Mayle,* 125 S.Ct. at 2566. Therefore, "re-

lation back" will be appropriate when "the original and amended petitions state claims that are tied to a common core of operative facts," *id.* at 2574, or when "the prisoner's amendment seeks merely to elaborate upon his earlier claims." *United States v. Hicks,* 283 F.3d 380, 388 (D.C.Cir. 2002).[1] The relationship between the original petition and the new claim must be stronger than the fact that both arose out of the "same trial, conviction, or sentence." *Mayle,* 125 S.Ct. at 2574.

Laurore requests permission to exhaust three new claims so that he may add them to his petition. First, he claims that the trial court erred in refusing to give an instruction on manslaughter over defense counsel's objection. Laurore Aff. ¶ 6. Second, he asserts that the trial court should have instructed the jury on the meaning of malice because his "mental impairment precluded the specific intent to commit murder." *Id.* Finally, he claims that he was "denied the assistance of counsel on direct appeal." *Id.*

█ Laurore's third new claim is easily dismissed. At no point in his original or amended petitions did he assert any argument even remotely related to his appeal or his appellate counsel. This claim is so clearly different in both time and type from the claims in his timely-filed petitions that Laurore is precluded from adding this claim to his petition by the statute of limitations.

█ Laurore's first and second new claims fair only slightly better. At first glance, it appears that these claims might relate to the third and fourth grounds for relief asserted in Laurore's amended petition, in that they all deal with allegedly defective jury instructions. Previously,

Laurore has asserted that the trial court's jury instructions on the voluntariness of Laurore's statements to police were constitutionally defective because the court failed to instruct the jury that voluntariness must be proved beyond a reasonable doubt. Am. Pet. Habeas Corpus at 6. Laurore's brief in his appeal to the Supreme Judicial Court suggests that this claim is based on his alleged mental impairment at the time of his interrogation by the police. Resp't App. Ex. B at 56–66. In this respect, the new claims concerning jury instructions as to Laurore's inability to form the requisite intent required for the charged crimes might be sufficiently similar to allow relation back, in that all three claims rely on an alleged mental deficiency and the trial court's failure to present this issue to the jury.

Upon closer examination, however, this reasoning cannot prevail. Although all the claims relate to alleged defects in the jury instructions, the new claims are of a distinctly different legal nature than the claim in the original petition. The new claims presumably rely on the Fourteenth Amendment and due process protections while the original claim is based on Laurore's Fifth Amendment privilege against self-incrimination. Therefore, the claims are not sufficiently similar in type. *Cf. Ciampi,* 419 F.3d at 24 (noting that a petitioner does not satisfy Rule 15(c) simply because both claims allege ineffective assistance of counsel).

Further, Laurore's new claims cannot be seen as an attempt simply to "elaborate upon his earlier claims." *Hicks,* 283 F.3d at 388. As mentioned above, Laurore originally claimed that the jury should have been instructed to consider whether his interrogation was voluntary beyond a rea-

---

1. In *Mayle,* the Supreme Court made clear that it was approving the analysis used by the majority of the Courts of Appeals at the time, including the District of Columbia Circuit. 125 S.Ct. at 2569, 2570–71.

sonable doubt. The later claims—those involving the instructions on the capacity to form intent at the time of the murder—cannot be considered the logical outgrowth of the claim that an erroneous standard of proof was explained to the jury. *See id.* ("[W]hile amendments that expand upon or clarify facts previously alleged will typically relate back, those that significantly alter the nature of a proceeding by injecting new and unanticipated claims are treated far more cautiously."). An examination of Laurore's mental state at the time the crimes were committed is simply not the same as an examination of his mental state at the time of his interrogation.

Therefore, because Laurore's new claims are not sufficiently related in time and type to the claims in his amended petition, he may not further amend the petition to include these new claims.

### C. Motion for Stay and Abeyance

■ Laurore asks this Court to stay his petition so that he may return to state court and exhaust the new claims discussed in the previous section of this order. Because the Court concludes that his new claims will not relate back to his amended petition, this request is now moot. Further, while this Court could, as a matter of comity and judicial economy, stay Laurore's petition while the state court considers his new claims, *see Nowaczyk v. Warden*, 299 F.3d 69, 78 (1st Cir. 2002), such action is not warranted in this case.

In *Nowaczyk*, the First Circuit held that it was an abuse of discretion for the district court to dismiss without prejudice a completely exhausted petition while the petitioner pursued other claims in state court. *Id.* at 71. The First Circuit did, however, suggest that where considerations of judicial economy and federal-

state comity might be served, a stay of the exhausted petition would be permissible. *Id.* at 77–78.

In the present case, these same considerations lead this court to conclude that a stay is improper. In terms of judicial economy, a stay would only serve further to delay decision on a petition that already has been on this Court's docket for almost three years, and has been floundering in the state court system for almost ten.

Further, the Court once has stayed the case for almost a year, allowing Laurore time to exhaust a number of other claims. Laurore failed to follow through on those claims. This Court sees no reason to believe Laurore would be more diligent this time around. Therefore, the probability that a state court decision favorable to Laurore would make the federal petition superfluous is outweighed by this Court's legitimate interest in timely resolution of cases before it.

Neither is a stay warranted in the interest of comity. The *Nowaczyk* court noted that principles of federal-state "comity [do] not require the district court to 'defer action' until the conclusion of state proceedings." *Id.* at 78. Massachusetts state courts have had the opportunity to rule on all the claims in Laurore's current petition. While a stay might arguably be consistent with comity, the Court's interest in prompt resolution of the petition, particularly given the procedural history of this matter, outweighs the concerns of comity.

### IV. CONCLUSION

Accordingly, Laurore's motion to drop unexhausted claims and for a stay [Doc. No. 31] is ALLOWED IN PART AND DENIED IN PART. Insofar as Laurore seeks to drop grounds five, six, and seven, the motion is ALLOWED. Insofar as the motion seeks to stay the petition so that he

may pursue separate state claims, it is DENIED. This Court will proceed timely on the merits of the remaining claims of his exhausted petition.

SO ORDERED.